UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WALTER ALLEN CORNETT, III,

     Plaintiff,

v.                                                    Case No.:  2:20-cv-518-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

     Plaintiff Walter Allen Cornett, III filed a Complaint on July 20, 2020.  (Doc. 1).  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits.  The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions.  (Doc. 22).  For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

     The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on May 23, 2017, alleging a disability onset date of April 22, 2016.  (Tr. at 15).[1]  Plaintiff's claim was denied initially on November 2, 2017, and upon reconsideration on March 29, 2018.  (*Id.*).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Joseph F. Dent held a hearing on July 24, 2019.  (*Id.* at 35-78).  The ALJ issued an unfavorable decision on September 18, 2019.  (*Id.* at 15-29).  The Appeals Council subsequently denied Plaintiff's request for review on May 27, 2020.  (*Id.* at 1-6)  Plaintiff then filed his Complaint with this Court on July 20, 2020, (Doc. 1), and the parties consented to

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed his claim after March 27, 2017.

proceed before a United States Magistrate Judge for all purposes.  (Docs. 16, 19).

The matter is, therefore, ripe for the Court's review.

III.       **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a

claimant has proven that he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x

890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

An ALJ must determine whether the claimant:  (1) is performing substantial gainful

activity; (2) has a severe impairment; (3) has a severe impairment that meets or

equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix

1; (4) can perform his past relevant work ("PRW"); and (5) can perform other work

of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-

40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then

the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*,

511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the

Social Security Act through March 31, 2018.  (Tr. at 17).  At step one of the

sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial

gainful activity from April 22, 2016, the alleged onset date, through March 31, 2018,

the date last insured.  (*Id*.).  At step two, the ALJ determined that Plaintiff had the

following severe impairments:  "obesity; right-sided hemiparesis, status post the

surgical removal of neoplasm; chronic cough with periodic syncope from vasovagal

reflex; hearing loss in the right ear and diplopia (20 [C.F.R. §] 404.1520(c))."  (*Id*.).

3

At step three, the ALJ determined that, through the date last insured, Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525[,] and 404.1526)." (*Id.* at 20).

At step four, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant can only frequently push and pull with the right upper extremity and frequently operate foot controls with his right lower extremity; he can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl, but never climb ladders, ropes and scaffolds or balance; he can frequently reach, handle and finger with his right upper extremity; he should avoid moderate exposure to extreme cold, hazardous machinery and unprotected heights; he should avoid concentrated exposure to excessive noise and irritants such as fumes, odors, dust, gases and poorly ventilated areas; he should avoid all work in completely dark spaces; he can occasionally look straight overhead; he is limited to occupations that do not require binocular hearing.

(*Id.* at 20-21). The ALJ also determined that "[t]hrough the date last insured, [Plaintiff] was capable of performing past relevant work as a police officer instructor and security guard. This work did not require the performance of work-related activities precluded by the claimant's [RFC] (20 [C.F.R. §] 404.1565)." (*Id.* at 26).

Alternatively, the ALJ found at step five that considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that "there were other jobs that existed in significant numbers in the national economy that the claimant also could have performed (20 [C.F.R. §§] 404.1569 and 404.1569a)." (*Id.* at 27).

Specifically, the ALJ, relying on Vocational Expert ("VE") testimony, found that Plaintiff "could perform work that exists in significant number[s] nationwide at both the light and the sedentary levels of exertion," including:  Usher (DOT# 344.677-014); Non-checking Cashier (DOT# 211.462-010); Ticket Taker (DOT# 344.677-010); Telephone Order Clerk (DOT# 209.567-014); Charge Account Clerk (DOT# 205.367-014); and Clerical Assistant (DOT# 209.587-010).  (*Id.* at 27-28).  For these reasons, the ALJ held that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from April 22, 2016, the alleged onset date, through March 31, 2018, the date last insured (20 [C.F.R. §] 404.1520(f))."  (*Id.* at 29).

## IV.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

## V.    Analysis

On appeal, Plaintiff raises three issues. As stated by the parties, the issues are:

1.   Whether the Commissioner properly evaluated Mr. Cornett's vision impairment;

2.   Whether the Commissioner's finding that Mr. Cornett could perform the standing and walking requirements of light work is supported by substantial evidence and whether the Commissioner's failure to make detailed findings as to Mr. Cornett's inability to balance requires remand; and

3.   Whether the Appeals Council properly considered the new evidence submitted after the Commissioner denied Mr. Cornett's claim.

(Doc. 22 at 15, 31, 40). The Court addresses each issue in turn below.

### A.    The ALJ Properly Assessed Plaintiff's Visual Impairments.

Plaintiff first argues that the ALJ erred in his assessment of Plaintiff's visual limitations. (*See* Doc. 22 at 15-22). Specifically, Plaintiff claims that the ALJ erred

by failing to:  (1) consider Plaintiff's nystagmus; and (2) include any visual limitations in Plaintiff's RFC.  (*Id.* at 15-16).

Plaintiff contends that the ALJ failed to address his nystagmus diagnosis because, while the ALJ found Plaintiff's diplopia as a severe impairment at step two of the sequential evaluation, the ALJ did not find Plaintiff's nystagmus severe.  (*Id.* at 16-17).  In support of this assertion, Plaintiff highlights the differences between diplopia and nystagmus, (*see id.* at 17 ("Diplopia is double vision[ and n]ystagmus[] refers to involuntary [eye] movements." (citation omitted))), summarizes his testimony on the symptoms he allegedly experiences because of the nystagmus, (*see id.* at 18-19 (citing Tr. at 41, 43, 44, 51, 56)), and summarizes the medical records related to his vision diagnoses, (*see id.* at 18-20 (citing Tr. at 186, 193, 231, 248-49, 274-75, 277-80, 292-98); *see also id.* at 21 (citing Tr. at 219, 243, 359)).  In sum, Plaintiff essentially contends that the ALJ erred by overlooking Plaintiff's nystagmus in the decision.  (*See id.* at 16-22).

Plaintiff also contends that the ALJ "ultimately failed to include any visual limitations in the [RFC] assessment or in the [his questions to the VE]," asserting that "although the ALJ stated he was incorporating visual limitations in the RFC assessment, he failed to do so."  (*Id.* at 16-17).  Plaintiff argues that the ALJ's decision reveals that the ALJ intended to include visual limitations in Plaintiff's RFC, but "forgot to."  (*Compare* Doc. 22 at 17 ("the ALJ said that the ability to safely drive 'strongly suggests' that the vision limitations are accommodated in the RFC

assessment but then does not include any visual limitations."), *with* Tr. at 25 ("[t]he ability to safely drive to and from the state of Virginia by himself strongly suggests that [Plaintiff's] vision (and hearing) limitations are adequately addressed in the residual functional capacity.")).  Moreover, Plaintiff asserts that the RFC limitations to "[(1)] avoid all work in completely dark spaces; [and (2) only] occasionally look straight overhead," (Tr. at 21), were not visual limitations, but rather limitations on Plaintiff's ability to move his head and balance, (*see* Doc. 22 at 20).  Finally, Plaintiff challenges the ALJ's reliance on Plaintiff's ability to drive from Florida to Virginia because "[t]he ALJ failed to understand that [Plaintiff's visual] issue pertains more to head movements and body movements as opposed to looking straight ahead with a head that is not moving (such as for a vision test)."  (*Id.* at 21).

In sum, Plaintiff's argument can essentially be condensed into two points.  First, that "[t]he ALJ [erred when he] failed to include any limitations regarding far or near acuity or limitations relative to the nystagmus or the double vision [in the RFC]."  (*See id.* at 21).  Second, that the ALJ misunderstood the impact of Plaintiff's visual impairments and did not consider the effect of Plaintiff's "body movements" on Plaintiff's vision impairments.  (*See id.*).

In response, the Commissioner contends that the ALJ did not commit a harmful error by failing to identify Plaintiff's nystagmus as a severe impairment because he identified other severe impairments and continued past step two of the sequential evaluation.  (*See id.* at 23-24).

Additionally, the Commissioner argues that the ALJ accounted for Plaintiff's diplopia and nystagmus and their resulting symptoms in the RFC. (*Id.* at 25). In support, the Commissioner essentially asserts that the ALJ did not separately assess each of Plaintiff's visual impairments because "Plaintiff's complaints related to nystagmus and diplopia were substantially similar in substance and nature." (*Id.* at 24 (citing Tr. at 41-44, 48, 51, 56)). Moreover, the Commissioner argues that the RFC limitations finding that Plaintiff could (1) never balance, (2) never work in completely dark spaces, and (3) only occasionally look straight overhead, were all included by the ALJ to account for Plaintiff's nystagmus and diplopia because Plaintiff alleged that the visual conditions impacted his balance and coordination. (*Id.* at 24-25 (citing Tr. at 20-26, 41-44, 48, 51, 56)).

In addition, as to visual acuity, the Commissioner asserts that (1) the record evidence relied on by the ALJ establishes that "Plaintiff's visual acuity was not as limited as alleged," (*see id.* at 29 (citing Tr. at 22-25, 57-59, 64-65, 182, 193, 219, 248, 293)), and (2) "the majority of the jobs identified by the VE at step five did not require constant acuity at a near or far range," (*id.* at 29 n.17 (citations omitted)).

The Commissioner also supports the ALJ's decision not to add additional visual RFC limitations by highlighting the ALJ's finding that Plaintiff's subjective symptom complaints "were not as limiting as alleged." (*Id.* at 25, 27 (citing Tr. at 21-26)). The Commissioner also notes that the ALJ considered that Plaintiff (1) "did not seek specialized treatment for any vision complaints until January 2018," (2) "continued driving daily throughout the relevant period," and (3) maintained the

abilities to shop independently, watch television, prepare simple meals, handle personal care, and manage finances. (*Id.* at 28 (citing Tr. at 22-26, 55-59, 63, 182, 193, 248-49)).

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. § 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Yet, "[a] claimant's burden to establish a severe impairment at step two is only 'mild.'" *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, however, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Instead, the ALJ need

only consider a claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Thus, the finding that any impairment is severe satisfies step two, and any failure to identify all impairments that should be severe is harmless. *Jamison*, 814 F.2d at 588; *see also Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (concluding that while the ALJ erred in finding the plaintiff's mental impairments non-severe, the error was harmless because the ALJ found other severe impairments and considered the mental impairments at later steps). "[B]eyond the second step, [however,] the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 842 (11th Cir. 2014) (internal citations omitted).

Additionally, the RFC is "the most" Plaintiff can do despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). To determine a plaintiff's RFC, the ALJ must use all relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238; 20 C.F.R. § 404.1545(e). When the Commissioner's decision is supported by substantial evidence, however, the Court will affirm, even if the Court would have reached a contrary result as the ALJ and even if the Court finds that "the evidence preponderates against" the Commissioner's decision. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

First, the Court finds that the ALJ committed a harmless error by failing to include nystagmus in the list of Plaintiff's severe impairments at step two. *See Jamison*, 814 F.2d at 588. Because the ALJ identified other severe impairments, including the related diplopia visual impairment, he continued beyond the second step of the sequential evaluation. (*See* Tr. at 17-29).

Additionally, the ALJ specifically evaluated Plaintiff's alleged visual limitations and impairments within the RFC determination. For example, the ALJ noted that: (1) Plaintiff had "some residual problems" associated with his brain surgery, (*see id.* at 17 (citing Tr. at 217-26, which specifically discusses, *inter alia*, Plaintiff's diplopia and latent hyperopia)); (2) Plaintiff alleges "vision problems in his right eye," (*id.* at 21 (citing Tr. at 231, which states "impaired lateral movement on R eye")); (3) Plaintiff inconsistently reported the amount of time that he spends driving, drove alone to Virginia in 2018 and West Virginia in 2019, and obtained "his concealed carry permit for the state of Florida and . . . carries a handgun while at church" as part of a "'safety plan' at his church," (*id.* at 23-24 (noting that Plaintiff's testimony about these activities was inconsistent "with the physical and vision issues that the claimant alleges")); and (4) Plaintiff was found to have "diplopia" and "extraocular movements" in early 2018, (*id.* at 25 (finding the alleged severity of Plaintiff's visual allegations inconsistent with the other evidence of record and noting that the allegations were sufficiently addressed in the RFC)). Moreover, during the hearing, the ALJ specifically asked Plaintiff: "being a former policeman you understand the horizontal gaze nystagmus . . . so your eyes jiggle when they get off

to the side . . . [?]"  To which Plaintiff responded:  "Yes[.]"  (*Id.* at 56).  Furthermore, the ALJ included RFC limitations meant to accommodate Plaintiff's visual impairments.  (*See id.* at 21 ("[Plaintiff] should avoid all work in completely dark spaces; he can occasionally look straight overhead[.]"); *see also id.* at 42-43 (in the context of questions regarding his "pulsat[ing]" and "jiggl[ing]" vision, Plaintiff testified that he will "blank out" if he looks straight overhead)).

Accordingly, because the ALJ identified other severe impairments at step two and because the ALJ sufficiently considered Plaintiff's nystagmus in combination with Plaintiff's other visual impairments, the Court finds that the ALJ's step two omission constitutes a harmless error.  *Jamison*, 814 F.2d at 588.

Second, the Court finds that the ALJ (1) sufficiently evaluated Plaintiff's visual impairments, (2) incorporated supported visual limitations into the RFC, and (3) asked the VE hypothetical questions that included those limitations. Accordingly, the Court finds that the ALJ's decision and RFC determination are supported by substantial evidence.

To begin, as explained in detail above, the ALJ sufficiently evaluated all of Plaintiff's visual impairments, including Plaintiff's diplopia, nystagmus, and visual acuity, in combination.  (*See* Tr. at 17, 21, 23-25, 42-34, 56 (citing Tr. at 217-26, 231)).  The Court's finding that the ALJ's evaluation is supported by substantial evidence is bolstered by the emphasis that the ALJ placed on the inconsistency between Plaintiff's reported activities, interstate driving trips, and involvement in his

church's "safety plan," (*see id.* at 23-25; *see also* Tr. at 58-59, 64-65), and Plaintiff's alleged visual limitations.

Additionally, the ALJ incorporated supported visual limitations into Plaintiff's RFC. (*See id.* at 20-21). Specifically, the ALJ found that Plaintiff could (1) never balance, (2) never work in completely dark spaces, and (3) only occasionally look straight overhead. (*Id.*). Moreover, upon a review of these RFC limitations in the context of Plaintiff's testimony during the hearing, (*see id.* at 41, 43-44), the Court finds Plaintiff's argument—that the ALJ "forgot to include visual limitations in the RFC," (Doc. 22 at 17)—unpersuasive. Rather, because Plaintiff specifically testified that his visual conditions impacted his balance, coordination, and head movement, the RFC limitations are directly relevant to accommodating Plaintiff's visual impairment allegations. In fact, while Plaintiff contends that his balance is a distinct consideration from his visual limitations, (*see* Doc. 22 at 20), the Court considers his directly conflicting testimony during the hearing:

> I was fatigued [be]cause my eyes help me, kind[ of] balance myself because my balance is so bad that my eyes kind[ of] – and if you put me in a dark room you[ will] know [be]cause you[ wi]ll hear me hit the wall . . . like Walmart, [be]cause their lighting[ is] funny, I have a hard time walking through Walmart.

(*Id.* at 41). Similarly, in the context of questions regarding his "pulsat[ing]" and "jiggl[ing]" vision, Plaintiff testified that he will "blank out" if he looks straight overhead, which belies his argument that the RFC limitation of only occasionally looking straight overhead was unrelated to Plaintiff's visual impairments. Finally,

Plaintiff's own arguments contradict themselves as Plaintiff states both that (1) the ALJ's limitations on head movement are unrelated to Plaintiff's visual impairments, (*see* Doc. 22 at 20), and (2) "[t]he ALJ failed to understand that [Plaintiff's visual] issue pertains more to head movements and body movements," (*see id.* at 21).

Because Plaintiff alleged specific symptoms stemming from his visual impairments—poor balance from bad vision and "blank[ing] out" from looking overhead—the Court finds that the ALJ accounted for Plaintiff's visual impairments in the RFC with specifically tailored RFC limitations. Additionally, because the limitations assessed by the ALJ are directly related to the evidence of record, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

Finally, a review of the hearing transcript shows that the ALJ included limitations that Plaintiff could (1) never balance, (2) never work in completely dark spaces, and (3) only occasionally look straight overhead in the ALJ's hypothetical questions to the VE. (*See* Tr. at 67-68). Additionally, the VE determined that a hypothetical individual with all three of those limitations could complete Plaintiff's PRW as actually or generally performed. (*Id.*).

Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence and remand is not required as to this issue.

### B.   The ALJ Properly Assessed Plaintiff's Ability to Stand, Walk, and Balance.

Second, Plaintiff argues that the ALJ erred by finding that Plaintiff (1) maintained the ability to stand or walk for six hours during an eight-hour workday

15

and (2) only had to avoid moderate exposure to unprotected heights, rather than all exposure. (*See* Doc. 22 at 31-35). In support, Plaintiff contends that the limitation to standing and walking for six hours is unsupported by substantial evidence of record and inconsistent with (1) two state agency medical opinions and (2) the RFC limitation that Plaintiff can never balance. (*Id.* at 32-35 (citing SSR 96-9p; (Tr. at 20, 84, 100))). Plaintiff also argues that the limitation to avoid moderate exposure to unprotected heights conflicts with the RFC limitation that Plaintiff can never balance. (*Id.* at 32, 35 (citing SSR 96-9p; (Tr. at 20))). Plaintiff concludes that these inconsistencies should not be considered harmless errors because the inability to engage in light work, combined with "the additional visual limitations [advanced in the first issue] would directly impact [the] sedentary occupation[s identified by the ALJ in his alternative finding]." (*Id.* at 34; *see also* Tr. at 28).

The Commissioner responds that the ALJ's RFC determination is supported by substantial evidence. (*See* Doc. 22 at 35-40). Specifically, the Commissioner argues that because the task of determining a claimant's RFC is within the province of the ALJ, the ALJ's determination is not "unsupported" merely because the record does not contain a medical opinion advancing the same work-related limitations delineated in the RFC. (*Id.* at 36 (citations omitted)). Additionally, the Commissioner asserts that substantial evidence within the record supports the ALJ's determination that Plaintiff is capable of completing the standing and walking requirements of light work. (*Id.* at 36-38 (citations omitted)). Moreover, the Commissioner contends that Plaintiff fails to overcome his step four burden to show

that he cannot complete his past relevant work as a police officer instructor and security guard because, in part, "[Plaintiff] does not identify any objective findings of record to support his claim that he is more limited than found by the ALJ." (*Id.* at 37-38 (citations omitted)).

The Commissioner also highlights the evidence relied on by the ALJ in his decision:  (1) that Plaintiff continued to perform the standing and walking requirements of his PRW following his 2014 brain surgery until April 2016; (2) that Plaintiff was regularly found to have a normal gait and stance in the medical records generated before the March 2018 expiration of Plaintiff's insured status; (3) that Plaintiff did not need an assistive device for walking; and (4) that the ALJ accounted for Plaintiff's alleged right-side weakness by incorporating lower right extremity limitations in the RFC.  (*Id.* at 36-37 (citing Tr. at 21-26, 40-41, 231, 262, 264-65, 275, 279, 351)).

Finally, the Commissioner contends that, even if the ALJ erred by finding that Plaintiff maintained the RFC to perform light work, the error was harmless because the ALJ identified sedentary work that existed in significant numbers in the national economy that Plaintiff could still perform.  (*See id.* at 38-40 (citations omitted)).

The RFC is "the most" Plaintiff can do despite his physical and mental limitations.  20 C.F.R. § 404.1545(a)(1).  To determine a plaintiff's RFC, the ALJ must use all relevant medical and other evidence in the record.  *Phillips*, 357 F.3d at 1238; 20 C.F.R. § 404.1545(e).  When the Commissioner's decision is supported by substantial evidence, however, the Court will affirm, even if the Court would have

reached a contrary result as the ALJ and even if the Court finds that "the evidence preponderates against" the Commissioner's decision.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The Court finds that the ALJ adequately considered the evidence of record in determining that Plaintiff maintained the RFC to perform light work with additional limitations.  To begin, the ALJ considered:  (1) Plaintiff's alleged fatigue, right side weakness, and inability to stand for forty-five minutes (*see* Tr. at 21-22 (citing Tr. at 40, 171-78, 186-92)); (2) the medical records showing that Plaintiff had an "antalgic gait, with some limping on the right side," "a normal gait, but with some limping on his right leg," lower extremities with "5/5 strength on the left side, but 4/5 strength on [the] right side," lower extremity strength reduced to "2/5," and that he did not need an assistive walking device, (*see id.* at 22-24 (citing Tr. at 262-67, 292-99, 275, 360)); (3) Plaintiff's self-reported activities of daily living including driving for extended distances, completing yard work, and being able to shop independently, (*id.* at 23-24 (citing Tr. at 182)); (4) the twenty-month gap in treatment records from Plaintiff's alleged onset date to January 2018, (*see id.* at 22 (citations omitted)); and (5) the state medical experts' opinions that Plaintiff was limited to standing and walking for only two hours out of an eight-hour workday, (*id.* at 26 (citing Tr. at 79-89, 92-105)).  Additionally, Plaintiff has failed to identify any additional evidence related to his ability to walk and stand that he contends that ALJ failed to consider or address.  (*See* Doc. 22 at 31-35).

Upon a review of the evidence and the ALJ's decision, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff can perform six hours of walking or standing during an eight-hour workday.  It is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record.  "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them."  *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).  Here, the ALJ's findings are supported by substantial evidence in the form of medical records related to Plaintiff's lower extremity strength and Plaintiff's testimony about his activities of daily living.  (*See* Tr. at 182, 292-99, 275).

Moreover, the Court finds that the ALJ properly accounted for Plaintiff's lower extremity limitations by limiting Plaintiff to (1) no more than light work and (2) no more than frequent use of the lower right extremity to operate foot controls. (*Id.* at 20-21).

Insofar as Plaintiff contends that the ALJ's decision to find the state agency medical opinions partially unpersuasive was an error, the Court disagrees.

Because Plaintiff filed his claim after March 27, 2017, revised Social Security Administration regulations regarding the consideration of medical opinion evidence apply.  *See* 20 C.F.R. § 404.1520c.  The regulations require that an ALJ apply the

same factors in the consideration of opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions.  20 C.F.R. § 404.1520c(a); *see also Marilyn Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) (applying the SSA's revised regulations).

Under the revised regulations, as to each medical source, the ALJ must consider:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c). Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered.  *See* 20 C.F.R. § 404.1520c(b)(2).  Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).  Stated differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

Here, in assessing Dr. Guttman's and Dr. Junejo's opinions, the ALJ found that the opinions were not supported in that they found Plaintiff limited to standing or walking for two hours out of an eight-hour workday.  (Tr. at 26 (citing Tr. at 79-

89, 92-105)).  Despite finding that the opinions were unsupported, the ALJ did not delineate the reasons that he found the opinions unsupported in the same paragraph. Rather, the Court finds that the ALJ addressed and explained the supportability and consistency of the medical record throughout all of the ALJ's RFC determination— the same record on which Dr. Guttman's and Dr. Junejo's opinions are based. Stated differently, the ALJ's step four determination, in which he assessed Plaintiff's subjective symptoms, reported activities of daily living, relevant medical records, and additional factors, (*see* Tr. at 21-24 (citing Tr. at 40, 171-78, 186-92, 262-67, 292-99, 275, 360, 182)), and then explained the inconsistencies between the pieces of evidence and his findings, (*see id.* at 23-25), is essentially a supportability and consistency determination for the state medical experts' opinions.

Upon review, the Court finds that the evidence cited by the ALJ supports his finding that the state agency medical consultants' opinions were unsupported by and inconsistent with the other evidence of record.  (*See id.* at 40, 171-78, 186-92, 262-67, 292-99, 275, 360, 182).  Additionally, the Court finds that the ALJ's determination of the persuasiveness of the state medical experts' opinions is supported by substantial evidence within the record.

Next, to the extent Plaintiff implies the ALJ's decision is unsupported because "no physician concluded that [Plaintiff] could stand/walk for six hour [sic] of eight hours a day," (Doc. 22 at 32), the Court finds the argument unpersuasive. Significantly, Plaintiff fails to cite to a regulation or case requiring that an RFC be based on a medical opinion.  (*See id.* at 32-35).  Rather, the RFC determination is a

task for the ALJ, not doctors.  *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors.").  In fact, under the regulations, "[s]tatements about what your residual functional capacity is using our programmatic terms," constitute "[e]vidence that is inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b.  Accordingly, the Court disagrees with Plaintiff's implied assertion that the ALJ can only find Plaintiff capable of standing and walking for six hours out of an eight-hour workday if the ALJ has access to a medical opinion in the record assessing the same.

Finally, to the extent Plaintiff argues that the RFC limitations are internally inconsistent because they permit Plaintiff to simultaneously (1) stand or walk for six hours out of an eight-hour workday, but (2) never balance, (*see* Doc. 22 at 32-35 (citations omitted)), the Court disagrees.

Social Security Ruling 96-9p[2] states that the Selected Characteristics of Occupations ("SCO") defines "balance" as "maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces."  SSR 96-9p, 1996 WL 374185, at *7.

---

[2] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)).  While Social Security Rulings are not binding on the Court, they are still afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Id.* (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)).

Plaintiff has not alleged, and nothing in the record suggests, that Plaintiff's PRW, as actually performed, required "walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces." Further, the *Dictionary of Occupational Titles* ("DOT") states that Plaintiff's PRW as generally performed in the national economy does not require any "walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces." DOT § 375.227-010, Police-academy Instructor, 1991 WL 673142 ("Balancing: Not Present – Activity or condition does not exist."); DOT § 372.667-038 Merchant Patroller, 1991 WL 673101 (same).

Moreover, as Plaintiff has provided no evidence to suggest that a limitation to avoid moderate exposure to unprotected heights conflicts with an inability to walk, stand, crouch, or run on narrow, slippery, or erratically moving surfaces, the Court is not persuaded by Plaintiff's argument as to that issue. *See* SSR 96-9p, 1996 WL 374185, at *7. Thus, Plaintiff has not identified any internal inconsistencies within the RFC limitations imposed by the ALJ.

In sum, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff can complete the standing and walking requirements of light work and return to her past relevant work. Accordingly, remand is not necessitated as to this issue.

**C.    The Appeals Council Properly Found that Plaintiff's New Evidence Did Not Show a Reasonable Probability that It Would Change the Outcome of the ALJ's Decision.**

Finally, Plaintiff contends that the Appeals Council failed to evaluate properly the additional evidence that Plaintiff submitted in his appeal of the ALJ's decision. (*See* Doc. 22 at 40-42).  Specifically, Plaintiff notes that he submitted new treatment records from Johns Hopkins Hospital dated between May 2014 and April 2015, ("Additional Evidence"), and argues that "the Appeals Council erroneously denied review and improperly concluded that the evidence was not material." (*Id.* at 40-44; *see also* Doc. 22-1).

In support, Plaintiff highlights that the Additional Evidence consists of notes associated with Plaintiff's June 2, 2014 brain surgery, his subsequent speech, occupation, and physical therapy, and his recovery and treatment following the surgery.  (*See id.* at 42-43).  Plaintiff states that the notes "confirm the severity of the brain tumor and the complex surgery and recovery after the surgery."  (*Id.* at 42). Plaintiff also states that the records discuss his diplopia, nystagmus, visual tracking complaints, difficulty walking, impaired fine motor control, balance issues, swallowing problems, and coughing difficulties.  (*Id.* at 42-43).  In sum, Plaintiff contends that the Additional Evidence is material to his decision because it would have proven that the symptoms he experienced during the relevant disability period "were consistent with and clearly related to his prior symptoms."  (*Id.* at 43).

24

In response, the Commissioner contends that the Appeals Council met its burden with respect to the Additional Evidence and thus remand would not be appropriate.  (*See id.* at 45-46).  In support, the Commissioner asserts that:  (1) the Additional Evidence pre-dates the relevant time period by at least a year; (2) Plaintiff continued to labor in his PRW during the time period covered by the Additional Evidence, thus showing that Plaintiff was not as limited by the residual effects of the surgery as he alleged; (3) the records would not affect the outcome of Plaintiff's case given that the crux of Plaintiff's argument is that he experienced an exacerbation of symptoms on or about April 22, 2016, the alleged onset date; and (4) the ALJ specifically discussed Plaintiff's 2014 brain surgery and its residual symptoms throughout the decision.  (*Id.* at 45-46 (citing Tr. at 20-26, 40-42, 156, 159, 219)).  Thus, the Commissioner argues that the Appeals Council correctly found that there is no reasonable probability that the Additional Evidence would change the outcome of the decision.  (*Id.* at 46).

Generally, claimants may present new evidence at each stage of the administrative process.  *Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x 939, 943 (11th Cir. 2017); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. § 404.900(b).  "The Appeals Council will review a case if it 'receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.'"  *Pupo v. Comm'r, Soc. Sec.*

*Admin.*, 17 F.4th 1054, 1063 (11th Cir. 2021) (quoting 20 C.F.R. § 416.1470(a)(5);

*see also* 20 C.F.R. § 404.970(a)(5).[3]

While considering new evidence, the Appeals Council may not "perfunctorily

adhere" to an ALJ's decision. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783

(11th Cir. 2014). But the Appeals Council need not "give a detailed rationale for

why each piece of new evidence submitted to it does not change the ALJ's decision."

*Id.* at 784. Thus, when the Appeals Council states that it has considered a claimant's

new evidence but finds that there is no reasonable probability that the evidence will

change the outcome of the ALJ's decision, the Court "will not second-guess that

[finding] absent some affirmative basis for concluding that [the Appeals Council]

failed to evaluate the new evidence." *Medders v. Soc. Sec. Admin., Comm'r*, No. 21-

11702, 2022 WL 222719, at *2 (11th Cir. Jan. 26, 2022) (citations and quotations

omitted). "For example, if [a] claimant submits new evidence related to an entirely

new condition which could have caused the claimant's back pain, we would expect

the Appeals Council to satisfactorily explain that new evidence . . . [b]ut no further

explanation is necessary where the claimant presents additional evidence related to a

---

[3] The SSA amended 20 C.F.R. § 404.970(a)(5) on December 16, 2016, with an effective date of January 17, 2017. *See* 81 Fed. Reg. 90987, 90996 (Dec. 16, 2016). The new version of § 404.970(a)(5) added the requirement that the new evidence show a reasonable *probability* of a different outcome before the Appeals Council will review the new evidence. Before this change, the Eleventh Circuit interpreted the term "material" in § 404.970(a)(5) to require the new evidence to show a reasonable *possibility* of a different outcome. *See Washington v. Soc. Sec. Admin., Comm'r.*, 806 F.3d 1317, 1321 (11th Cir. 2015). Because Plaintiff filed his claim after the effective date, the Court finds that the amended version of § 404.970(a)(5) applies. *See Pupo*, 17 F.4th at 1063 n.3.

medical condition that was already considered by the ALJ." *Id.* (quotations omitted) (citing *Mitchell*, 771 F.3d at 783-85).

Here, the Appeals Council noted that it received "records from John Hopkins Hospital, covering the period May 29, 2014 through April 30, 2015," but that it found that the "evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. at 2). The Appeals Council did not have to provide a detailed rationale as to why each piece of the Additional Evidence did not change the ALJ's denial of benefits. Thus, the Court finds that the Appeals Council met its burden related to the assessment of the Additional Evidence. S*ee Mitchell*, 771 F.3d at 784. Moreover, the Court finds that Plaintiff has failed to identify a sufficient "affirmative basis," *see id.* at 783, for the Court to overturn the Appeals Council's decision. Indeed, upon a review of the Additional Evidence and the ALJ's decision, the Court finds that the Additional Evidence covers medical conditions and impairments expressly considered by the ALJ. (*Compare* Doc. 22-1, *with* Tr. at 17-26). Accordingly, the Court finds that the record does not support Plaintiff's claim that the Appeals Council failed to properly evaluate the Additional Evidence.

Additionally, the Court finds that substantial evidence supports the Appeals Council's determination that the Additional Evidence "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." (Tr. at 2). To begin, the Additional Evidence significantly predates the alleged onset date, April 22, 2016, and so does not provide direct evidence for the relevant time period. (*See* Doc. 22-1). Moreover, the ALJ expressly considered the timing of the conditions and

27

diagnoses presented in the Additional Evidence. For example, the ALJ found Plaintiff's "status post the surgical removal of neoplasm" as a severe impairment at step two of the sequential evaluation and stated that Plaintiff "is status post suboccipital craniectomy with some residual problems." (*Id.* at 17 (citing Tr. at 217-26 (records from Johns Hopkins Medicine summarizing Plaintiff's Problems List, Encounters, and Laboratory Results))). The ALJ also discussed the timing and subsequent diagnostic testing associated with Plaintiff's 2014 brain surgery at step four of the sequential evaluation. (*Id.* at 21 (citing Tr. at 217-26 (records from Johns Hopkins Medicine summarizing Plaintiff's Problems List, Encounters, and Laboratory Results))). Accordingly, the Court finds that the ALJ was sufficiently aware of Plaintiff's 2014 surgery such that the Additional Evidence would be cumulative of information the ALJ already considered.

The Court also notes that the evidence of record specifically records Plaintiff's visual impairments and states that they began before Plaintiff's alleged onset date. (*See* Tr. at 218 (noting that Plaintiff's Diplopia began July 14, 2014, and that Plaintiff's "latent hyperopia" began September 23, 2015)). Because the ALJ considered this exact record in his decision, the Court is not persuaded by Plaintiff's argument that the ALJ would benefit from access to this Additional Evidence.

In addition, the Court notes that Plaintiff has not identified any alleged impairment within the Additional Evidence that the ALJ did not consider in his decision. Instead, the Additional Evidence contains records of the same clinical information already considered by the ALJ, including that Plaintiff underwent brain

surgery in 2014 and exhibited visual impairments, balance issues, and coughing difficulties.  (*See* Tr. at 21 (noting that Plaintiff alleges limited use of his extremities, coughing problems, visual problems, and balance problems)).  Because the Additional Evidence is cumulative of evidence already considered by the ALJ, the Court finds that substantial evidence supports the Appeals Council's determination that no "reasonable probability" existed that the Additional Evidence would change the outcome of the ALJ's decision.  *See Sanders v. Soc. Sec. Admin., Comm'r*, 854 F. App'x 311, 315 (11th Cir. 2021).

In addition, the Court is not persuaded by Plaintiff's argument that the Additional Evidence is material such that it can be used to show that Plaintiff's impairments during the relevant period resembled his impairments before the relevant period.  In arriving at this conclusion, the Court notes that Plaintiff returned to work, despite the allegedly consistent symptoms, as early as November 13, 2014. (*See* Doc. 22-1 at 81; *see also* Tr. at 40).  He went on to continue to work for nearly two years until the alleged onset date and a reported exacerbation of his symptoms. (*See* Tr. at 40-41).  Accordingly, because Plaintiff's own testimony explains that the severity of his symptoms changed, (*see id.*), the Court is not persuaded that the Additional Evidence has a reasonable probability of changing the outcome of the decision through its alleged consistency with the evidence already available in the record.

In sum, the Court finds that the Additional Evidence:  (1) predates the relevant time period; (2) consists of findings duplicative of those expressly considered by the

ALJ in his decision; (3) presents evidence associated with a period of time during which Plaintiff engaged in his PRW; and (4) relates to a 2014 surgery that the ALJ discussed.  Accordingly, the Court finds that substantial evidence supports the Appeals Council's determination that no "reasonable probability" existed that the Additional Evidence would change the outcome and, therefore, remand is not warranted as to this issue.  *See* 20 C.F.R. § 404.970(a)(5); *see also Medders*, 2022 WL 222719, at *2.

## VI.   Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds that the ALJ's decision is due to be affirmed.  Accordingly, the Court **ORDERS** that:

1.   The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.   The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 8, 2022.

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties